[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 22, 2008
THOMAS K. KAHN
CLERK

No. 05-15793
_____

D.C. Docket No. 92-00230-CR-DMM

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

FRED DE LA MATA,
MANUEL A. CALAS, et al.,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 22, 2008)**

Before TJOFLAT and CARNES, Circuit Judges, and HODGES,* District Judge.

TJOFLAT, Circuit Judge:

_____

* Honorable Wm. Terrell Hodges, U.S. District Judge for the Middle District of Florida, sitting by designation.

This case illustrates the problems the Government encounters when it deviates from the procedural and substantive rules governing criminal forfeiture by obtaining the defendants' promises to convey certain interests in property to the United States, in lieu of a forfeiture trial and sentence, and the defendants renege.

I.

A.

On December 16, 1992, a Southern District of Florida grand jury returned a fifty-nine count indictment[1] against Fred De La Mata, Manuel A. Calas, Oscar Castilla, Enrique Fernandez (the "defendants"), Real Estate Partners, Inc., and Hialeah Properties, Inc. (the "corporate defendants"). The indictment charged the defendants with, among other crimes, racketeering, 18 U.S.C. § 1962(c), racketeering conspiracy, 18 U.S.C. § 1962(d), money laundering, 18 U.S.C. § 1956, and bank fraud, 18 U.S.C. § 1344. The corporate defendants, which were wholly owned by the defendants, were charged with racketeering and racketeering conspiracy.[2]

The indictment also contained a forfeiture count in which the Government

---

[1] This was a superceding indictment. The initial indictment was returned on April 14, 1992, and contained seventy-eight counts.

[2] The defendants used the corporate defendants in carrying out their scheme to defraud Republic National Bank of Miami, the principal activity for which they were indicted. See United States v. De La Mata, 266 F.3d 1275, 1279, 1281 (11th Cir. 2001).

sought forfeiture, under 18 U.S.C. § 1963(a)[3] and 18 U.S.C. § 982(a),[4] of the defendants' interests in various pieces of property: securities, including the defendants' interest in the shares of the corporate defendants;[5] real estate; and bank accounts held in the names of companies (not the corporate defendants) that were wholly owned by the defendants.[6] The Government also sought forfeiture of the corporate defendants' interests in two bank accounts held in their names. Immediately after the indictment was returned, the district court granted the Government's motion for a restraining order pursuant to 18 U.S.C. §

---

[3] Section 1963(a) provides, in relevant part, that whoever engages in racketeering in violation of 18 U.S.C. § 1962 "shall forfeit to the United States" the following:

> (1) any interest the person has acquired or maintained in violation of section 1962 . . . and
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . in violation of section 1962.

[4] Section 982(a)(1) provides that a person who engages in money laundering in violation of 18 U.S.C. § 1956 shall "forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Section 982(a)(2) provides that a person who engages in bank fraud in violation of 18 U.S.C. § 1344 shall "forfeit to the United States any property constituting, or derived from, proceeds that person obtained directly or indirectly, as the result of such violation."

[5] The Government also sought the defendants' interests in the shares of other corporations, that were not named as defendants in the indictment.

[6] The defendants used these companies to establish bank accounts in which they deposited funds derived from their offenses.

1963(d)(1)(A),[7] enjoining the defendants and corporate defendants from using, transferring, alienating, or otherwise encumbering their interests in the property listed in the forfeiture count.

The case against both the defendants and corporate defendants, which were not represented by counsel, proceeded to trial on October 14, 1992. Two and a half months later, on December 30, the jury found the defendants and corporate defendants guilty on nearly all counts of the indictment. United States v. De La Mata, 266 F.3d 1275, 1285 (11th Cir. 2001).

After receiving the jury's verdicts, the court declared a recess until January 4, 1993, when the trial on the forfeiture count would begin. During the interim, the defendants and the Government settled the forfeiture issues.[8] In exchange for

---

[7] 18 U.S.C. § 1963(d)(1)(A) provides:

(d)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in [18 U.S.C. § 1963(a)] for forfeiture under [§ 1963(a)] –
(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under [§ 1963(a)] . . . .

The court entered the restraining order on April 14, 1992, on the return of the initial indictment in the case. The order remained in effect following the return of the superceding indictment.

[8] The parties settled the forfeiture issues by entering into agreements, which they referred to as "stipulations." De La Mata and Fernandez entered into separate agreements with the Government; Calas and Castilla reached a joint agreement with the Government.

4

the Government's release of the defendants' interests in some of the property listed in the forfeiture count, the defendants agreed to the forfeiture of their interests in the remaining property, including their interests in the shares of the corporate defendants and the bank accounts held in the corporate defendants' names. The corporate defendants and the Government reached no agreement on forfeiture.

The Government and the defendants informed the district court of the settlements they had reached on January 4, just before the forfeiture phrase of the trial was to begin, and asked the court to approve the agreements. They represented that the settlements were mutually beneficial to the defendants and the Government. The settlements would benefit the defendants because the Government would be acquiring less than what it sought in the forfeiture count.[9] They would benefit the Government because a trial on the forfeiture count, which the prosecutor estimated could take over a year, would be avoided.[10]

The district court's approval of the settlements depended on whether the defendants had entered into them freely and voluntarily. The court therefore

---

[9] The prosecutor told the court that "a conservative estimate" of the total amount forfeited under the agreements was $7,627,908.07. Without the agreements, the prosecutor stated, the total value of the forfeiture would approach approximately $9,500,000.

[10] The parties agreed that if a defendant's conviction were reversed on appeal, the forfeiture of interests that depended on the validity of the conviction would be "null and void."

5

examined the defendants and their attorneys as it would in entertaining a plea of guilty under Federal Rule of Criminal Procedure 11. After hearing their responses, the court found that the defendants had voluntarily agreed to the terms of the settlements. On January 7, 1993, it entered an order approving the parties' agreements.[11]

## B.

Under 18 U.S.C. §§ 1963(a) and 982(a)(1), if a convicted defendant's interest in property is to be forfeited to the Government, the district court must provide for the forfeiture as part of the defendant's sentence.[12] In this case, the court did not include the forfeiture it had approved on January 7, 1993, as part of its pronouncement of the defendants' sentences, which the court imposed from the bench on April 23, 1993. The court memorialized the defendants' sentences in judgments of conviction entered on April 30, 1993. These judgments also

---

[11] The court labeled this order, "Judgment and Order of Forfeiture."

[12] 18 U.S.C. § 1963(a) requires that "[t]he court, in imposing sentence . . . shall order, in addition to any other sentence imposed pursuant to [§ 1963(a)], that the [defendant] forfeit to the United States all property described in [§ 1963(a)]." Similarly, 18 U.S.C. § 982(a)(1) requires that "[t]he court, in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. §] 1956 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Section 982(a)(2) requires that "[t]he court, in imposing sentence or a person convicted of a violation of . . . [18 U.S.C. § 1344] shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."

contained no mention of forfeiture.

The district court sentenced the corporate defendants on May 6, 1993, placing them on non-reporting probation for three years. The judgments of conviction in their cases, which were entered the same day, contained no mention of forfeiture.

The defendants filed timely appeals of their convictions.[13] While their appeals were pending, the defendants separately moved the district court for a new trial on the ground that the judge who presided at their trial and sentencing should have recused. The defendants' appeals were held in abeyance pending resolution of the motions. A district judge, sitting by designation,[14] granted the motions, and a panel of this court affirmed. United States v. Cerceda, 139 F.3d 847, 852-55 (11th Cir. 1998). On rehearing en banc, the defendants' judgments of conviction and sentence were reinstated, United States v. Cerceda, 172 F.3d 806, 817 (11th Cir. 1999), and on January 4, 2000, the defendants' appeals went forward.

The defendants' convictions were affirmed, except for two bank fraud

---

[13] Hernandez also appealed his sentences. See 18 U.S.C. § 3742(a). The Government did not cross-appeal Hernandez's sentences on the ground that the district court erred in failing to order forfeiture as part of Hernandez's sentences, nor did it appeal the other defendants' sentences on the same ground. See 18 U.S.C. § 3742(b).

[14] See 28 U.S.C. § 292(b).

counts.[15]  De La Mata, 266 F.3d at 1304-05.  The mandate issued on December 4, 2001, thus bringing the criminal cases against the defendants to an end.[16]

While the defendants' appeals were ongoing, the Government, on May 24, 1993, published notice of the defendants' purported forfeitures in the Miami Review.  In June and July 1993, Ocean Bank, Republic National Bank of Miami, De La Mata's wife, Lourdes De La Mata, and the De La Matas' four children petitioned the district court pursuant to 18 U.S.C. § 1963(l) and 21 U.S.C. § 853(n)[17] to hold ancillary hearings to adjudicate the validity of their claims to the property interests the defendants had supposedly forfeited to the Government under the district court's order of January 7, 1993.  These ancillary hearings were

---

[15] Also affirmed were Hernandez's sentences.

[16] The corporate defendants did not appeal their convictions or sentences.  Their convictions and sentences therefore became final on May 17, 1993, the eleventh day following the district court's entry of the judgments of conviction.

[17] 18 U.S.C. § 1963(l) provides the procedural framework under which third parties may assert claims to an interest forfeited under 18 U.S.C. § 1963(a).  It allows for a third party wishing to assert such a claim to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  18 U.S.C. § 1963(l)(2).  The third party must file this petition within 30 days of the Government's final publication of a notice to dispose of the interest forfeited under the defendant's sentence.  Id.  21 U.S.C. § 853(n) provides the "judicial or administrative" procedures used in adjudicating forfeiture authorized under 18 U.S.C. § 982, see 18 § U.S.C. 982(b)(1), and it authorizes third party proceedings identical to those of 18 U.S.C. § 1963(l).
    In this case, because the district court did not make forfeiture part of the defendants' sentences, the defendants' interests were never forfeited to the United States and the 30-day time clock for filing third party petitions did not begin to run.  The members of De La Mata's family, Ocean Bank, and Republic National Bank nonetheless filed petitions.

never held, however, because the Government settled their claims. The last settlement, involving Ocean Bank's claim, occurred on December 2, 2002.

C.

To recapitulate, this was the status of the property interests the defendants had agreed to forfeit to the United States in January 1993. Their interests had not actually been forfeited to the United States by operation of law because the district court had not ordered their forfeiture as part of the defendants' sentences in conformance with the requirements of 18 U.S.C. §§ 1963(a) and 982(a). And unless the defendants had voluntarily conveyed such interests to the United States, which they had not, they still retained title to the interests. This retention was subject, of course, to the terms of the agreements they had entered into with the Government in January 1993.

To ensure against the possibility that, notwithstanding those agreements, the defendants might seize the interests they had agreed to forfeit – for example, by withdrawing funds from the bank accounts held in the names of various companies which they owned – the Government made sure that the restraining order the court entered following the return of the indictment remained in place. Presumably, the restraining order could remain in force indefinitely, but that would not give the Government what it needed to take title to some of the properties, such as

9

securities, held in the defendants' names, and bank accounts held in the names of companies which they owned. What the Government needed to obtain title to the interests subject to the restraining order were amendments to the defendants' sentences explicitly forfeiting such interests to the United States. The Government attempted to fulfill that need on December 13, 2002.

## II.

## A.

On Friday, December 13, 2002, the Government filed, and served on the defendants by mail,[18] a motion for a "final order of forfeiture."[19] As the authority for its motion, the Government cited 18 U.S.C. §§ 1963 and 982, subsections (a) of which require that the forfeiture of a defendant's interest in property be made part of the defendant's sentence, and asked the court to order forfeited to the

---

[18] The Government served the defendants by mailing a copy of its motion to their attorneys. As indicated infra, the Government's motion sought the corporate defendants' interests in two bank accounts, but the Government did not serve its motion on the corporate defendants.

[19] At the conclusion of the ancillary proceedings authorized under 18 U.S.C. § 1963(l) and 21 U.S.C. § 853(n), as discussed in note 17, supra, the district court will enter a final order of forfeiture, adjudicating the Government's ownership of the forfeited interests vis-a-vis those of the petitioning third parties. 18 U.S.C. § 1963(l)(6); 21 U.S.C. § 853(n)(6); Fed. R. Crim. P. 32.2(c)(2) (2000) ("When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights.")

Since no ancillary hearings occurred in this case, as the third parties settled with the Government, there was no need for the district court to enter a final order of forfeiture.

United States some[20] of the interests listed in the January 1993 agreements.[21]  The

motion included the two bank accounts held in the corporate defendants' names,

although it did not cover the defendants' interests in the corporate defendants'

stock.  The district court granted the Government's motion the following Tuesday,

December 17, entering a final order of forfeiture that forfeited the interests

precisely as the motion had requested.

On December 23, De La Mata and his wife moved the district court to set

aside the December 17 order.  They argued that they had an unspecified legal

claim to two of the "amounts of monies" listed in the final order of forfeiture and

had intended to oppose the Government's motion but had been denied an

opportunity to be heard in violation of Local Rule 7.1(C), which required the court

to give them ten days to respond to the Government's motion before issuing a

ruling.[22]  Their motion did not cite the rule of procedure under which they were

---

[20] The Government represented in the motion that it did "not cover all of the assets listed in the preliminary order of forfeiture.  The remaining assets will be addressed in a subsequent motion."

[21] The motion requested that the court's order recite that such "assets . . . are forfeited to the United States" and that "the United States has clear title to the property which has been forfeited to the United States pursuant to the order of forfeiture and may warrant good title to any subsequent purchaser or transferee in accordance with 18 U.S.C. §§ 1963 and 982."

[22] Local Rule 7.1(C) states that "[e]ach party opposing a motion shall serve an opposing memorandum of law not later than ten days after service of the motion."  S.D. Fla. R. 7.1(C).

proceeding.[23]

The Government responded to the De La Matas' motion on December 26, 2002. It characterized the motion as a motion for reconsideration timely filed pursuant to Federal Rule of Civil Procedure 59(e)[24] and thereby represented to the district court that the proceeding before it constituted a civil case. The response labeled the motion groundless, as it failed to specify the legal basis for the De La Matas' claim to the property, and overbroad, as it sought to set aside the court's entire order, but only referred to two of the property interests the order listed.

The district court summarily denied the De La Matas' motion for reconsideration on January 16, 2003. In doing so, the court apparently agreed with the Government that the case was a civil matter, involving a claim by the Government to enforce the settlement agreements the court had approved on January 7, 1993. De La Mata, alone, filed a notice of appeal on January 27, 2003,

---

[23] The Federal Rules of Criminal Procedure contain no provision authorizing a defendant to move the district court to reconsider the sentence it has imposed. By statute, a defendant's sentence must be appealed pursuant to 18 U.S.C. § 3742(a) within ten days of its imposition, see Fed. R. App. P. 4(b)(1)(A), unless the time for filing the notice of appeal is extended as provided in Fed. R. App. P. 4(b)(4).

[24] Federal Rule of Civil Procedure 59(e), " Motion to Alter or Amend Judgment," states: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." The De La Matas' motion for reconsideration was filed well within this ten day period.

challenging the district court's orders of December 17 and January 16.[25]

B.

On October 2, 2003, this court disposed of De La Mata's appeal in an unpublished decision. United States v. De La Mata ("De La Mata II"), No. 03-10546, at 8 (11th Cir. Sept. 3, 2003). Before turning to De La Mata's argument for reversal, the court questioned whether it had jurisdiction over the appeal and, if so, whether De La Mata had standing to prosecute it. Id. at 2 n.1. It answered the jurisdictional question in the affirmative by treating the controversy as a civil case.[26] Id. In so doing, the court noted that the Government, in responding to the De La Matas' December 23 motion, had treated the case as a civil proceeding by considering De La Mata's motion as having been filed pursuant to Rule 59(e).[27]

---

[25] The notice of appeal was filed within sixty days of both orders. See Fed. R. App. P. 4(a)(1)(B).

[26] If the case before the De La Mata II court was a criminal proceeding, i.e., the Government had asked the district court to amend the defendants' sentences and De La Mata was appealing from the district court's order amending them, the court would have dismissed the appeal for lack of jurisdiction because De La Mata had neither filed his notice of appeal within ten days of the December 17 final order of forfeiture nor obtained an extension of the time to file it. See Fed. R. App. P. 4(b)(1)

[27] The panel also noted that a motion filed under "[Fed. R. Civ. P.] 60(b) . . . also would seem to provide a basis for De La Mata's motion as it permits relief from a judgment for 'any . . . reason justifying relief.'" United States v. De La Mata, No. 03-10546, at 6 (11th Cir. Sept. 3, 2003).

Id. at 5-6. The court answered the standing question in the affirmative as well.[28]

Id. at 2 n.1. The court, additionally, recognized that the controversy at hand concerned the "stipulation" the Government and De La Mata had submitted to the district court prior to the commencement of forfeiture proceedings, which stated "as to the items specified in the indictment, what De La Mata would and would not forfeit to the government," id. at 3, and the Government's effort to enforce the stipulation despite the fact that the district court had not ordered forfeiture as part of De La Mata's sentence. Id. at 3-4.

Having determined that all parties were properly before it, the court therefore proceeded to the issue De La Mata had raised: whether the district court had abused its discretion by ruling on the Government's motion without affording him ten days to respond to the motion, as required by Local Rule 7.1(C). Id. at 6-8. The court readily concluded that an abuse had occurred and therefore vacated the district court's final order of forfeiture and remanded the case for further

---

[28] Had the district court ordered forfeiture as part of De La Mata's sentences on April 30, 1993, and thereafter conducted ancillary proceedings under 18 U.S.C. § 1963(l) and 21 U.S.C. § 853(n), De La Mata would have lacked standing to oppose the Government's motion for a final order of forfeiture, because the disposition of his interests would have been final at sentencing. See 18 U.S.C. § 1963(l)(2) (stating that "any person other than the defendant" is authorized to file a third party claim to the interests forfeited to the United States.); 21 U.S.C. § 853(n)(2) (stating same); Young v. United States, 489 F.3d 313, 315 (7th Cir. 2007) ("Young's interest in the disputed funds was resolved through the jury's verdict, the 'preliminary' order of forfeiture, and the judgment of conviction.").

14

proceedings.  Id. at 8.

## C.

On October 22, 2003, after the case had been remanded, De La Mata filed a response to the Government's December 13, 2002 motion for a final order of forfeiture.  Citing our decisions in United States v. Pease, 331 F.3d 809, 813 (11th Cir. 2003), and United States v. Gilbert, 244 F.3d 888, 924-25 (11th Cir. 2001), he argued that because the district court had not ordered forfeiture as part of his sentences (on their imposition on April 30, 1993), no forfeiture had occurred.[29] Moreover, once he was sentenced and thereafter appealed his convictions, the court no longer had subject matter jurisdiction under 18 U.S.C. § 3231[30] to amend his sentences, as the Government was requesting.  A consequence of this lack of jurisdiction, he suggested, was that the court had no lawful basis for continuing to hold his interests under its post-indictment restraining order; he therefore sought (as part of his response to the Government's December 13 motion) the return of

---

[29] United States v. Gilbert, 244 F.3d 888, 924-26 (11th Cir. 2001), holds that 18 U.S.C. § 1963(a) requires forfeiture to be imposed at sentencing or title to a defendant's interest will not transfer to the Government.  United States v. Pease, 331 F.3d 809, 813 (11th Cir. 2003), holds that "[t]he United States cannot acquire a convicted defendant's interest in property under 21 U.S.C. § 853(a) [which authorizes forfeiture as punishment for narcotics offenses] unless and until the district court orders the interest forfeited as part of its judgment in the defendant's case."

[30] 18 U.S.C. § 3231 gives the district courts "original jurisdiction . . . of all offenses against the laws of the United States."

his interests under the aegis of Federal Rule of Criminal Procedure 41(g).[31]  The

other defendants filed similar responses, adopting De La Mata's arguments and

asking for the return of their interests.  The corporate defendants, who, having

never been served with process, had not been parties to the proceedings up to this

point, appeared with counsel and responded (without opposition from the

Government) to the Government's December 13 motion.  As part of their

response, they asked for the return of their bank accounts, as designated in the

Government's motion, pursuant to Rule 41(g).

The Government filed a response in opposition to all of these responses on

November 14, 2003, and, on December 1, 2003, the defendants and corporate

defendants filed a joint reply.  On September 28, 2005, the district court issued an

order granting the Government's December 13, 2002 motion for a final order of

forfeiture.[32]  In its order, the court first addressed the question of which of the

---

[31] Fed. R. Crim. P. 41(g), "Motion to Return Property," states, in relevant part:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. . . . If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Implicit in De La Mata's demand that the interests at issue be returned was a request that the court vacate the restraining order.

[32] The court's order simply reinstated its December 17 order granting the Government's motion.

16

defendant parties were before the court. It held that since De La Mata was the only defendant who had appealed from its December 17, 2002 order granting the Government's December 13 motion, only De La Mata would be heard. The remaining defendants, by not appealing that order, had waived their right to be heard in opposition to the Government's motion. Having said this, the court rejected as meritless De La Mata's opposition to the Government's December 13 motion. It made no mention of De La Mata's request for Rule 41(g) relief, presumably because its decision to grant the Government's motion rendered such request moot. The defendants and corporate defendants now appeal the district court's September 28, 2005 rulings.

III.

The defendants and corporate defendants ("appellants" unless otherwise indicated) present the same arguments they made to the district court in opposing the Government's motion for a final order of forfeiture and requesting Rule 41(g) relief. The Government, in reply, concedes that forfeiture was never ordered as part of appellants' sentences, but argues, nonetheless, that the district court's ruling should be affirmed. The Government first contends that only De La Mata is properly before this court, on the ground that the remainder of the appellants waived their right to challenge the court's September 28, 2005, final order of

17

forfeiture because they had not joined De La Mata in appealing the December 17, 2002 final order of forfeiture.[33]  The Government then argues that De La Mata, or, should we disagree with its initial contention, all of the appellants, lacked standing to oppose the Government's December 13, 2002 motion for a final order of forfeiture[34] and that considerations of equity required that the district court deny the appellants' Rule 41(g) motion.

## A.

As a threshold matter, we must determine whether all appellants are properly before this court.  On remand following our decision in De La Mata II, the district court limited the controversy to the dispute between the Government and De La Mata, since he was the only defendant to have appealed from the court's December 17, 2002 final order of forfeiture.  In doing so, the court apparently overlooked the scope of  De La Mata II's mandate.  That mandate "vacat[ed] the final order of forfeiture and remand[ed]" the case "for further

---

[33] The Government, as did the district court, overlooked the fact that the corporate defendants could not have waived their right to join De La Mata in appealing the district court's December 17, 2002 order, because the Government had not brought them before the district court.

[34] In advancing this position, the Government apparently views the district court's January 7, 1993, order approving the settlement agreements as the functional equivalent of the inclusion of forfeiture in the defendants' sentences, which would have barred the defendants from contesting the final order of forfeiture.  See 18 U.S.C. § 1963(l)(2); 21 U.S.C. § 853(n)(2); supra note 28.

proceedings." De La Mata II, No. 03-10546, at 8 (11th Cir. Sept. 3, 2003).[35]

Thus, the only pleading pending on remand was the Government's December 13, 2002 motion, to which all of the appellants (except the corporate defendants, who had yet to appear in the case) could respond. See 49 C.J.S. Judgments § 357 (2008) ("Where a judgment is vacated or set aside by a valid order or judgment, it is entirely destroyed and the rights of the parties are left as though no such judgment had ever been entered."). Consequently, and contrary to the Government's position, all of the appellants (including the corporate defendants) were properly before the district court and, now, are properly before us. We accordingly proceed to a disposition of these appeals, whether to disturb, in whole or in part, the district court's final order of forfeiture.

B.

We first consider appellants' principal argument – that the district court lacked subject matter jurisdiction to grant the Government's December 13, 2002 motion for a final order of forfeiture. The argument assumes that in granting the motion, the court was amending appellants' sentences, to include forfeiture, and

---

[35] In that De La Mata was the sole appellant in De La Mata II, No. 03-10546, at 8 (11th Cir. Sept. 3, 2003), the court, in vacating the December 17 final order of forfeiture, could have vacated the order only as it applied to De La Mata, in which event the final order of forfeiture would have remained intact as to the remaining appellants. The court, however, did not limit the vacatur in that way.

19

therefore was exercising its jurisdiction under 18 U.S.C. § 3231,[36] despite the absence of a pending criminal case. If the district court was purporting to, and did, amend the defendants' sentences,[37] the law provided them with the means to challenge the court's action; they could appeal the court's judgments under 18 U.S.C. § 3742(a).[38] They had ten days, until January 2, 2003, to do so;[39] absent the filing of a notice of appeal within that period, the district court's judgments would become final.[40]

De La Mata did appeal, but his notice of appeal was not filed until January 27, 2003. The appeal was untimely if he was appealing a district court order

---

[36] The argument correctly assumes that amending a defendant's sentence to include a forfeiture order would constitute a substantive amendment, i.e., a re-sentencing, and not the correction of a clerical error under Fed. R. Crim. P. 36. See United States v. Pease, 331 F.3d 809, 816 (11th Cir. 2003) (holding that Rule 36 cannot be used to amend a sentence to include a forfeiture order).

[37] At first blush, it appeared that this is what the district court was doing in granting the Government's motion (except as to the corporate defendants, who were not before the court). As we explain in the text below, however, the court was not amending De La Mata's sentences; instead, it was, in effect, enforcing the agreement De La Mata had made with the Government and the court had approved on January 7, 1993.

[38] 18 U.S.C. § 3742 provides, in relevant part:

(a) Appeal by a defendant. – A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence –
(1) was imposed in violation of law . . . .

[39] See supra note 23.

[40] Since the district court's alleged error could be asserted on direct appeal, because the grounds for appealing were a matter of record, it is doubtful that De La Mata could obtain relief under 28 U.S.C. § 2255, since that provision does not serve as substitute for a direct appeal.

20

amending his sentences, i.e., an amended judgment in a criminal case.[41]  The

appeal was timely, however, if De La Mata was appealing the district court's final

disposition of a civil case.  The latter step is what he was taking, in the view of De

La Mata II court.  The court exercised jurisdiction over the appeal as civil matter[42]

after observing that the case involved a "stipulation" providing for the disposal of

the items listed in the indictment's forfeiture count and the Government's attempt

to have the stipulation enforced.  De La Mata II, No. 03-10540, at 3 (11th Cir.

Sept. 3, 2003).

In sum, appellants' argument that the district court lacked subject matter

jurisdiction – because the Government's motion for a final order of forfeiture

sought relief in a criminal case via amended sentences – fails.  What the district

court had before it was a civil case, instituted by a "motion" that was the

functional equivalent of a complaint in a civil case, a complaint seeking the

specific enforcement of forfeiture agreements reached between the Government

---

[41] Had De La Mata informed the De La Mata II court that he was appealing the amendment of his sentences in a criminal case, the court would have dismissed his appeal as untimely.

[42] Note that De La Mata treated the case as a civil matter when he moved the district court for reconsideration of its December 17 order; the Government, in response, considered the motion as having been filed pursuant to Fed. R. Civ. P. 59(e), as discussed in note 24, supra, and the De La Mata II court did likewise.  De La Mata II, No. 03-10546, at 5-6 (11th Cir. Sept. 3, 2003).

21

and the defendants – in a criminal case – but not made part of the defendants' sentences. The district court had subject matter jurisdiction to proceed under 28 U.S.C. § 1345.[43]

The defendants do not dispute that they entered into these agreements freely and voluntarily, as they represented to the court when it questioned them on January 4, 1993, nor have they argued that the law somehow precluded the Government and a criminal defendant from providing for forfeiture by contract in advance of the trial on forfeiture.[44] In the absence of any argument from the defendants on this point, we see no error in the Government reaching this, albeit somewhat unconventional, arrangement with the defendants. See United States v. Bank of New York, 14 F.3d 756, 758 (2d Cir. 1994) (noting that defendant had settled civil forfeiture suit by executing consent decree); United States v White, No. 01-173-JJB, 2008 WL 780667, at *1-2 (M.D. La. Mar. 19, 2008) (holding that defendant lacked standing to enjoin Government from seizing property he forfeited pursuant to a consent judgment, entered in lieu of normal criminal

---

[43] 28 U.S.C. § 1345 states, in relevant part, that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States."

[44] In this case, the defendants' promises were not self-executing; that is, the defendants promised to transfer their interests to the Government at some future date. Had the promises been self-executing, the Government would not have instituted this litigation, which sought to obtain clear title to such interests.

forfeiture proceedings); cf. United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999) ("A plea agreement is, in essence, a contract between the Government and a criminal defendant."). Absent a legal impediment to the settlement of forfeiture issues in the manner in which the settlements occurred in this case, we have no reason to vacate the district court's "final order of forfeiture." We therefore affirm the court's final order of forfeiture as it applies to the defendants.

The corporate defendants were not parties to the agreements the Government reached with the defendants on January 4, 1993, and the court approved three days later, on January 7. Accordingly, the Government's December 13, 2002 motion, which sought, in essence, the specific enforcement of promises the defendants had made in those agreements did not, and could not, have involved the corporate defendants.[45] The corporate defendants, then, still have possession of their interests in the their bank accounts, subject, of course to the district court's extant restraining order, and thus we do not affirm the final order of forfeiture to the extent that it provides for the transfer of the corporate defendants' interests

_____

[45] The defendants did promise to give the Government their shares of the corporate defendants (of which the defendants were the sole owners) in their January 4, 1993 agreements, but the Government's December 13 motion did not seek the enforcement of that promise. Had it done so, the Government, as the now sole shareholder in the corporate defendants, could presumably have accessed the defendants' accounts.

23

C.

As noted above, the district court's September 28, 2005 order, which reinstated the December 17, 2002 final order of forfeiture, did not mention appellants' applications for the return of interests under Rule 41(g). Our affirmance of the reinstated final order of forfeiture renders moot the applications of the defendants, but it does not render moot the Rule 41(g) applications of the corporate defendants. Rule 41(g) rulings are based on a balancing of the equities and are reviewed under the abuse of discretion standard. United States v. Machado, 465 F.3d 1301, 1307 (11th Cir. 2006). Balancing the equities is a matter for the district court in the first instance. We therefore vacate the portion of the September 28 order to the extent that it applies to the corporate defendants' Rule 41(g) applications and remand the case to the district court for further proceedings.

AFFIRMED, in part; VACATED and REMANDED, in part.

24