[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11270

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIAM A. WHITE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:13-cr-00304-JA-GJK-1

_____

2                  Opinion of the Court                  21-11270

_____

No. 21-11503

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM A. WHITE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:13-cr-00304-JA-GJK-1

_____

Before JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

      Defendant William White, a federal prisoner proceeding *pro se*, appeals the district court's denial of his motion for

compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and his motion for the return of seized property pursuant to Federal Rule of Criminal Procedure 41(g). We discern no error in the district court's order denying Defendant's motions, and thus affirm.

## BACKGROUND

Defendant was indicted on five counts of sending extortionate threats to government officials, in violation of 18 U.S.C. § 875(b). At trial in 2014, the Government used messages obtained from Defendant's e-mail address at dhyphen@yahoo.com to identify him as the sender of the threatening messages. The jury convicted Defendant on all five counts.[1]

According to the PSR, Defendant's convictions arose from his involvement in the American Neo Nazi movement. In 2012, Defendant used the account nslf_helterskelter@hotmail.com to threaten various Florida officials and their family members with the goal of securing the release of white nationalists who were being held on state charges. The threats provided the names and addresses of the officials and stated, among other things, that the sender would "grab" their named family members, including the grandchildren of one official, and "FUCK THEM WITH KNIVES" and "CUT THEIR FUCKING HEADS OFF and leave them in A

---

[1] The jury also convicted Defendant on a separate count of identity theft in violation of 18 U.S.C. § 1028(a)(7), but the district court granted Defendant's motion for judgment of acquittal as to that count.

COOLER OUTSIDE YOUR OFFICE."  The same threatening message was copied to dhyphen@yahoo.com, which was registered to Defendant, and posted on the websites of two nonprofit groups. Law enforcement identified Defendant as the individual who sent the threats after obtaining search warrants for Defendant's social media accounts and three e-mail addresses, including nslf_helterskelter@hotmail.com and dhyphen@yahoo.com.

After applying several enhancements, the PSR assigned Defendant a total offense level of 32.  The PSR determined Defendant's criminal history category to be V, based on his numerous past convictions, including convictions for possession of a concealed deadly weapon, resisting arrest, assault and battery, assault, solicitation to commit a crime of violence, interstate communication of a threat to injure, tampering with a witness, and extortion by interstate commerce.   Defendant's total offense level and criminal history category yielded a recommended guidelines range of 188 to 235 months in prison.

At sentencing, the district court adjusted Defendant's total offense level to 30 after declining to apply an obstruction of justice enhancement, resulting in a recommended guidelines range of 151 to 188 months.  During the sentencing, the court characterized Defendant's offense conduct as "brutal" and his criminal past as "singular" in the judge's experience.  After describing the nature of Defendant's criminal history, the court observed that, "[u]nless [Defendant] is confined, he will continue to harass and threaten and intimidate innocent citizens" because he is "filled with hate" and

"he has no regard for the laws of this land." Accordingly, the court concluded that Defendant's case required an upward variance from the recommended guidelines range, and it sentenced Defendant to 210 months on each of the counts of his conviction, to be served concurrently to each other but consecutively to a 92-month sentence imposed in the Western District of Virginia based on similar conduct by Defendant.

Defendant filed the current motion for compassionate release in December 2020, while an inmate at USP-Marion. Defendant submitted the motion *pro se* and under the authority of 18 U.S.C. § 3582(c)(1)(A), which authorizes a district court to reduce a defendant's sentence if the reduction is warranted by "extraordinary and compelling reasons" and if the defendant's release is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) and the applicable guidelines policy statements. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[2]

In his motion, Defendant protested his innocence of the underlying crimes in this case while at the same time describing his efforts to disrupt and thwart the FBI's operations against domestic terrorism. More relevant to his request for compassionate release, Defendant argued that he suffered from post-traumatic stress

---

[2] A sentence reduction is also permitted by § 3582(c) under certain circumstances if the defendant is 70 years old or older and has served at least 30 years in prison, but those conditions are not met in this case. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

disorder ("PTSD"), which qualified as an extraordinary and compelling reason for his early release.  As a result of his PTSD, Defendant explained, he suffered "serious physical and medical conditions and serious functional and cognitive impairments" that substantially diminished his ability to care for himself while incarcerated, as evidenced by Defendant being in a catatonic state for part of 2011 and nearly dying from dehydration in 2014.  Defendant argued that his symptoms were aggravated by COVID-19 prison lockdowns and that his mental health issues were permanent disabilities that "prevent[ed] [him] from functioning in a correctional environment."

As to his continuing risk of threat to the community, Defendant claimed in his motion that he practiced yoga 90-120 minutes a day, 6 days a week, and that while in prison he had been able to "basically run a small law practice suing the DOJ and BOP full time."  Defendant argued further that he was innocent of the offenses underlying his conviction and that he had tried to help solve other crimes.  Citing his "substantial support" from the community, Defendant suggested that the court "should have no problem believing that [he would] continue to be non-violent" after his release.

21-11270                Opinion of the Court                    7

Defendant attached a declaration and other exhibits to his § 3582(c) motion in a submission that totaled nearly 500 pages.[3]  In his declaration, Defendant described in detail his personal history and his belief that "practitioners of Judaism" run the United States as a "Judaic-supremacist society" and that Judaism "is the religion of the Devil, and, its spread is part of the Devil's plan to enslave and exterminate the human race."  He further explained:  "I do not believe that Negroes are human, in that I do not believe they have human souls, but, are a kind of animal" who "are a drain on white society."  Defendant stated in the declaration that he organized individuals to target and disrupt FBI investigations because of his belief that the FBI and the DOJ are the biggest obstacles to the liberation of white working people.

Again more relevant to his request for release, Defendant stated in his declaration that he had psychotic breaks in 2010, 2011, and 2014, one of which he believed was caused by someone poisoning him and one that was the result of being kept in a "torture facility" that consisted of a white cell with constant bright light.  He claimed that he suffered physically and was threatened with torture and subjected to various "bizarre efforts to manipulate [him]" including limiting his mail, preventing him from writing to his child, and manufacturing disciplinary reports against him.  In support of

---

[3]  Most of Defendant's attachments are FBI reports and Freedom of Information Act requests, court records, articles, Internet postings, and related documents that are not relevant to the issues on appeal here.

his motion, Defendant attached a psychological evaluation completed by Dr. Richard Samuels in 2019 and concluding that Defendant "met the diagnostic criteria" for severe PTSD. In addition to PTSD, Samuels included narcissistic personality disorder in his diagnostic impressions of Defendant, and he characterized Defendant's experiences while incarcerated as "potentially traumatic."

Regarding rehabilitation, Defendant stated in his declaration that he had completed numerous courses and certifications, including a yoga certification, that he had helped two people show their actual innocence and successfully represented an individual before the Seventh Circuit, and that he was "told that a lawsuit [he] brought . . . [was] settling." He stated that friends and family helped him pay legal costs, and that he intended to support himself outside of prison "by publishing and fundraising."

The district court denied Defendant's motion for release, finding that he had failed to establish extraordinary and compelling reasons for a sentence reduction and that his release was not supported by § 3553. As to the first ground, the court determined that Defendant had not produced evidence indicating that his medical condition diminished his ability to care for himself in prison. The court noted that Dr. Samuels's report did not conclude that Defendant was unable to care for himself and that a medical report produced by the Government indicated that Defendant achieved the highest possible score on a self-maintenance scale. Further, none of Defendant's medical records from prison showed that he suffered from a "serious medical condition." Finally, the court

found it significant that Defendant self-reported his ability to engage in regular physical activity and "run a small law practice."

As to the § 3553 factors and Defendant's continuing threat to the community, the court noted that it had considered those factors when it originally sentenced Defendant and determined that the nature of his offense and his criminal history warranted a 210-month sentence. According to the court, Defendant did not present any evidence in his motion that would change the § 3553 analysis in favor of a reduced sentenced or show that Defendant no longer posed a danger to the public. On the contrary, the court found that Defendant's disciplinary problems in prison and various portions of his court filings that could be characterized as "hate speech" mitigated strongly against early release under § 3553.

In addition to his motion for compassionate release, Defendant filed a motion under Federal Rule 41(g) for the return of certain e-mails seized by the Government pursuant to a warrant for the email address dhyphen@yahoo.com. In support of his motion, Defendant argued that the subject e-mails contained information relevant to a confession to the Joan Lefkow murders, and that he wanted them back for his own "contemptuous delight" in "mak[ing] the [DOJ] and those judges who have rubber stamped their lies look and feel stupid." Defendant attached to his motion a declaration in which he admitted that his attorney had at some point given him a binder full of hard copies of e-mails from the account, and that he "recall[ed] seeing an[] e-mail" referring to the Lefkow confession. Defendant also acknowledged that he had

given his mother a digital copy of the e-mails, but he claimed the copy was damaged and that the DOJ had all remaining hard copies.

The district court denied Defendant's motion for return of property, concluding that he did not show that he was wrongly deprived of the e-mails and that he was not entitled to their return because he had unclean hands.  As to wrongful deprivation, the court noted that Defendant did not argue that the Government's warrant to seize emails from the dhyphen@yahoo.com account was unlawful, and it emphasized Defendant's admission that the Government had given a copy of the e-mails to Defendant's attorney and that Defendant had given a digital copy of the e-mails to his mother.  Regarding unclean hands, the court noted that Defendant had "used the dhyphen@yahoo.com e-mail account to receive blind copies of threats he sent via other e-mail addresses controlled by him which facilitated his misconduct," and that the e-mails on that account "were direct evidence in his trial showing user attribution and the persistence of his threats."

Defendant appeals the district court's denial of his motion for compassionate release and his motion for return of the seized emails.  As to the compassionate release issue, Defendant claims that his PTSD qualifies as an extraordinary and compelling reason for his release under § 3582(c).  In addition, Defendant argues that the district court abused its discretion when it analyzed the § 3553 factors because the court only considered whether Defendant was a danger to the public, dismissing other relevant factors.  With regard to his motion for the return of seized property, Defendant

argues that the court erred in finding he had not been deprived of the subject e-mails because the Government returned his e-mails from the dhyphen@yahoo.com account to one of his attorneys on a damaged disc and his other attorney will not return the e-mails to him. Defendant also contends that the district court erred by applying the unclean hands doctrine because the threats that led to his conviction were sent from a different e-mail address, the account in question did not provide direct evidence in the current case, and he is seeking the return of specific e-mails, not the account itself.

## DISCUSSION

### I.    Motion for Compassionate Release

#### A.    Standard of Review

We review de novo whether a defendant is eligible for a sentence reduction under § 3582(c). *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021). Once eligibility is established, we review the denial of a defendant's § 3582(c) motion under the abuse of discretion standard. *See id.* "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (quotation marks omitted)). The abuse of discretion standard allows the district court a "range of choice" that we will not reverse "just because we might have come to a

different conclusion had it been our call to make." *See id.* at 912 (quotation marks omitted).

### B.    Analysis

As amended by the First Step Act, and as relevant here, § 3582(c) authorizes the district court to reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is consistent with the sentencing factors of § 3553(a) and the "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The applicable policy statement, found in U.S.S.G. § 1B1.13, echoes the statutory requirements, stating that a district court may reduce a defendant's sentence "if, after considering the factors set forth in . . . § 3553(a)," the court determines that (1) "[e]xtraordinary and compelling reasons warrant the reduction" and (2) "[t]the [d]efendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. *See also United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that "1B1.13 is an applicable policy statement for all [§ 3582(c)(1)(A)] motions" and that district courts do not have discretion "to develop other reasons that might justify a reduction in a defendant's sentence" (quotation marks omitted)); *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021) (listing three necessary conditions for a sentence reduction under § 3582(c): support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to U.S.S.G. § 1B1.13's policy statement).

The district court denied Defendant's § 3582(c) motion for two reasons. First, the court found that Defendant had failed to show extraordinary and compelling reasons for his release. Alternatively, the court determined that the § 3553(a) sentencing factors weighed against Defendant's release and that Defendant continued to pose a danger to the community. Either ground is adequate to support the district court's decision to deny Defendant's § 3582(c) motion.

As to the first ground, we agree with the district court that Defendant did not provide adequate support for the claim that his medical condition satisfies the extraordinary and compelling reason standard.[4] Pursuant to the applicable guidelines policy statement, a medical condition can qualify as an extraordinary and compelling reason for a sentence reduction if the defendant: (1) has a terminal illness such as cancer, ALS, or end-stage organ disease, or (2) suffers from a serious physical or mental condition that "substantially diminishes" his ability "to provide self-care" in prison and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A). Defendant did not claim to suffer from a terminal illness, and he provided no evidence to show that his PTSD—which is the

---

[4] Pursuant to the applicable guidelines policy statement, a defendant can establish an extraordinary and compelling reason for his release based on a qualifying medical condition, age, and qualifying family circumstances. *See* U.S.S.G. § 1B1.13 cmt. n.1. Here, Defendant's only potentially viable option is to show a qualifying medical condition because the age and family circumstances provisions clearly do not apply. *See id.*

only medical condition that could otherwise potentially satisfy § 1B1.13—"substantially diminishes" his ability to care for himself in prison. On the contrary, the medical records produced by Defendant—including the psychological report by Dr. Samuels—do not indicate that Defendant was unable to provide self-care, and the Government's medical records show that Defendant scored the highest possible number of points on a self-maintenance scale. In addition, Defendant self-reported that he can engage in regular physical activity, including both practicing and teaching yoga, and that he "is sufficiently cognitive to run a small law practice" in the prison. The district court thus correctly determined that Defendant did not meet the standard for early release set out in the applicable policy statement of U.S.S.G. § 1B1.13.[5]

Defendant's failure to demonstrate an extraordinary and compelling reason for his early release is enough, in and of itself, to foreclose a sentence reduction under § 3582(c). *See Giron*, 15 F.4th at 1347 ("When denying a request for compassionate release, a district court need not analyze the § 3553(a) factors if it finds either that no extraordinary and compelling reason exists or that the defendant is a danger to the public."). But the district court also held, in the alternative, that Defendant's release was not consistent with

---

[5] Defendant argues that the district court erred by relying on U.S.S.G. § 1B1.13 in applying the "extraordinary and compelling" reason standard, but that argument is foreclosed by this Court's binding precedent in *Bryant* holding that § 1B1.13 applies to all § 3582(c)(1)(A) motions. *See Bryant*, 996 F.3d at 1247–48.

the § 3553(a) factors.  In support of its alternative holding, the court emphasized that Defendant was convicted of threatening to kidnap, rape, and murder Florida state officials and their family members, with the goal of extorting the officials to dismiss state charges against members of a white supremacist organization.  In connection with the threats, Defendants published photos and identifying information about the State Attorney and the judge handling a case involving the organization, among other state officials.

The district court noted that it had considered the above facts, in addition to Defendant's lengthy and violent criminal history, in determining a reasonable sentence in this case.  According to the court, Defendant did not present any information in his motion that would alter the § 3553(a) analysis.  On the contrary, even in the submissions filed in support of his motion, Defendant continued to use hate speech.  In addition, Defendant "had disciplinary problems in prison."  The district court was thus within its discretion to find that the § 3553 sentencing factors weighed against Defendant's release pursuant to § 3582(c).  *See United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (noting that "discretion in weighing sentencing factors is particularly pronounced when it comes to weighing criminal history").[6]

---

[6] Contrary to Defendant's argument, the court was not required to discuss or "exhaustively analyze" each of the § 3553 factors or explicitly state that it considered each of the factors.  *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

## II.    Motion for Return of Seized Property

### A.    Standard of Review

This Court reviews a district court's denial of a motion for return of seized property under Rule 41(g) for an abuse of discretion. *United States v. De La Mata*, 535 F.3d 1267, 1279 (11th Cir. 2008). In considering a Rule 41(g) motion, this Court reviews questions of law *de novo* and the district court's factual findings for clear error. *United States v. Howell*, 425 F.3d 971, 973 (11th Cir. 2005).

### B.    Analysis

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). A Rule 41(g) motion must be filed in the district where the property was seized, and "[t]he court must receive evidence on any factual issue necessary to decide the motion." *Id.* When the owner of property files a Rule 41(g) motion after the close of criminal proceedings, the motion is treated as a civil action in equity. *United States v. Owen*, 963 F.3d 1040, 1054–55 (11th Cir. 2020). To obtain relief, the property owner must show both that "he had a possessory interest in the property seized by the government" and that he has "clean hands" regarding the property. *Howell*, 425 F.3d at 974.

Here, the district court did not abuse its discretion in denying Defendant's Rule 41(g) motion because it did not clearly err when it found that there was no evidence to suggest the e-mails

were obtained by an unlawful search and seizure, and likewise no evidence indicating that the Government deprived Defendant of the e-mails. Defendant did not raise an unlawful search and seizure argument. Further, Defendant acknowledged below that the Government had given his attorney a binder that included hard copies of the subject e-mails and that Defendant himself had given his mother a digital copy of the e-mails.

In addition, it was within the district court's discretion to find that Defendant did not have clean hands regarding the dhyphen@yahoo.com e-mail address, and that his Rule 41(g) motion fails for that reason as well. *See Howell*, 425 F.3d at 974 ("[I]n order for a district court to grant a Rule 41(g) motion, the owner of the property must have clean hands."). The e-mail account at issue was used to identify Defendant and tie him to the charged offenses, and through it, Defendant was able to preserve copies of the threats he made. Because the e-mail account was used in the commission of Defendant's crimes he is not entitled to the return of its contents under the district court's equitable jurisdiction. *See id.* (concluding that the defendant, who had sold large quantities of cocaine and sought the return of firearms and government funds that a confidential informant had shown him, "c[a]me into court with extremely unclean hands" and therefore was not entitled to relief (quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendant's motion for compassionate release and

its order denying Defendant's motion for the return of seized property.